1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AMIT BHARTH,                                    No.  2:23-cv-0259 DJC AC P

12                   Petitioner,

13          v.                                       FINDINGS AND RECOMMENDATIONS

14   DANNY SAMUEL, Warden,

15                   Respondent.

16

17          Petitioner is a California state prisoner proceeding through counsel with an application for

18   a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition

19   challenging petitioner's 2019 conviction for rape and related offenses.  ECF No. 1.  Respondent

20   has answered, ECF No. 11, and petitioner has filed a traverse, ECF No. 16.

21                                   BACKGROUND

22   I.      Proceedings in the Trial Court

23          A.  The Evidence Presented at Trial[1]

24              1.  Prosecution Case

25          In late January 2017, C.D. was 24 years old and staying at a friend's house in Sacramento.

26   One evening she approached a man, later identified as petitioner, in a parking lot and asked to use

27   _____

28   [1]  This factual summary is adapted from the opinion of the California Court of Appeal, ECF No.
     10-9 at 2-3.  The facts are construed in the light most favorable to the judgment.

                                        1

his cell phone.  He forced her into his sport utility vehicle (SUV) and drove away.  Over the next seven days, they slept in motels or his SUV.

Petitioner twice raped C.D. in a motel room.  During the week he was with her, he would not let her leave.  He beat her, including slapping the back of her head hard and punching her in the face, shoulders, legs, and arms.  He hit her with a propane tank, pulled out chunks of her hair, banged her head against parts of the SUV, and attempted to burn her with a blowtorch.  On the evening of February 2, 2017, she escaped from the SUV and ran to a nearby business.  An employee of that business called 911.

When officers arrived at the scene, C.D. was crying and scared.  She had serious injuries to her face and back and was taken to the hospital by ambulance.  At the hospital, she was crying and restless.  She could only partially open her mouth and complained that any movement of her body was painful.  Her clothes were ripped and bloody and she was missing large patches of hair on the back of her head.  She reported that defendant had forcibly raped her and forced her to orally copulate him.  Medical personnel observed severe bruising and swelling on her face as well as numerous bruises and abrasions all over her body.  She was unable to open her left eye and her right eye was hemorrhaging.  She had nasal bone fractures and a concussion, and her vaginal area was red.

On March 2, 2017, C.D. identified petitioner as the perpetrator from a photographic lineup.  DNA analysis revealed that petitioner's profile matched the sperm profile on the swabs taken from C.D.

2.  Defense Case

Petitioner testified that he met C.D. in the parking lot on the evening of January 24, 2017.  He allowed her to use his cell phone and then agreed to give her a ride.  After that they hung out together for a week and had consensual sexual intercourse several times.  Over the course of the week, they went to various places including casinos, stores, movies, restaurants, parks, and a fitness center.  The last time petitioner saw C.D. was the evening of January 31, 2017, when he dropped her off at a Burger King so she could meet up with her grandma.

Petitioner denied raping C.D., threatening her, or hitting her.  He denied that he forced her into his SUV, or that he forced her to orally copulate him.  He did admit that he repeatedly lied to the police when he claimed he did not have sex with her.

B.  Outcome

The jury returned verdicts of guilty on two counts of forcible rape, assault by means of force likely to produce great bodily injury, and false imprisonment.  The jury also found true the allegation that defendant personally inflicted great bodily injury.

Petitioner was sentenced to a prison term of 23 years and eight months.

II.    Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on August 19, 2021.  ECF No. 10-9.  The California Supreme Court denied review on November 17, 2021.  ECF No. 10-11.

Petitioner filed no applications for collateral relief in the state courts.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99 (2011).  State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

1   decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

2   may be overcome when there is reason to think some other explanation for the state court's

3   decision is more likely."  Id. at 99-100.

4         The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

5   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

6   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

7   Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

8   issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

9   (2013).

10         A state court decision is "contrary to" clearly established federal law if the decision

11   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

12   U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

13   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

14   the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

15   was incorrect in the view of the federal habeas court; the state court decision must be objectively

16   unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

17         Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

18   Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

19   reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

20   words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

21   Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

22   confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

23   724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

24   summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

25   state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

26   must determine what arguments or theories may have supported the state court's decision, and

27   subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

28   ////

1

DISCUSSION

2     I.      <u>Petitioner's Confrontation Clause Claim and Pertinent State Court Record</u>

3       A.  <u>Overview</u>

4       Petitioner's sole claim for relief is that his rights under the Confrontation Clause were

5 violated by C.D. being "permitted to testify… [while] sitting sideways crouched over in the

6 witness chair with her face covered by her long hair so that the only portion visible to the court

7 and jury was the right side of her face covered by her hair."  ECF No. 1 at 34 (quoting defense

8 motion for mistrial).  She was permitted to face away from the defendant; her voice was

9 "extremely low and sometimes undecipherable"; and it would have been impossible for jurors to

10 see her facial expressions or demeanor.  <u>Id.</u>  Petitioner refers C.D.'s positioning on the witness

11 stand as "the accommodation," and alleges that it was "no different than having a screen placed

12 between her and the jurors."  <u>Id.</u> at 34, 37.

13       Petitioner contends that "the accommodation" violated his confrontation rights in several

14 ways, which can be grouped into three categories: (1) petitioner and his counsel were deprived of

15 the opportunity to see and assess the witness's facial expressions and tone of voice as she made

16 her accusations on direct examination; (2) jurors were deprived of the opportunity to see and

17 assess the witness's facial expressions and tone of voice as she made her accusations; and (3)

18 denial of "physical face-to-face confrontation" was impermissible because the reliability of the

19 witness's testimony was not otherwise assured, her emotional state did not warrant an

20 accommodation, and the necessity for accommodation was not otherwise established.  <u>See</u> ECF

21 No. 1 at 2-3 (Table of Contents) and 36-60.

22       B.  <u>Factual Background</u>

23       The complaining witness, C.D., suffered from bipolar disorder, depression, and anxiety.

24 <u>See</u> I CT 187 (defense motion in limine).[2]  She became distressed during her testimony, and after

25 an initial break the prosecutor invited her to sit with her chair turned to face away from counsel

26 table and toward the jury.  The defense objected, and the trial court overruled the objection.  I RT

27

28    [2]  The Clerk's Transcript on Appeal is docketed at ECF Nos. 10-3 through 10-6.

5

214.[3]  Witness examination continued to be difficult due to C.D.'s fragile emotional state.[4]

The next morning the prosecutor moved for a continuance, explaining that C.D. had been up all night having an anxiety attack and did not have her prescription medication, which she had not taken for two days.  The prosecutor explained that C.D. had experienced an anxiety attack during direct examination, and that she was in bed sobbing and was "catatonic."  I RT 234-235. The continuance was granted, and the defense moved for a mistrial.  I RT 239-240; I CT 250-259. C.D. returned to the witness several days later, and the parties agreed that the mistrial motion would be heard following her testimony.  I RT 244.  Her hair was now in a ponytail, id. at 245, so that her face was not obscured on cross-examination.  She had to be reminded repeatedly to speak up and to use the microphone.  She continued to find it difficult to talk about the events at issue.

At hearing on the motion for mistrial,[5] the defense argued that the jury did not have an adequate opportunity to observe C.D.'s demeanor (including facial expressions) in order to assess her credibility on direct examination.  The court described the layout of the courtroom, explaining that the witness was seated at juror height and approximately four or five feet away from the jury box.  I RT 358-360.  The judge detailed C.D.'s reluctance to testify and her difficulties on and off the stand.  He noted that although she was an adult woman, she suffered from certain mental deficiencies and was clearly "suffering trauma as she testified."  I RT 367.  The court continued:

> [I]t's clear to the court that this witness could barely get through these proceedings. She could not look up. She could not look at the defendant. She did not even want to look up and around the courtroom. She's nervous; frantic; scared; afraid. According to her, she has to relive this trauma because of the defendant.
>
> So in order to get her testimony out, the court did allow her to turn the chair and did allow her to stay in that position over [defense counsel's] objection that he couldn't see her in order to just be able to get her testimony out, and get her in a position where she would at least talk and answer questions.

---

[3]  The Reporter's Transcript on Appeal (RT) is docketed at ECF Nos. 10-1 and 10-2.  C.D.'s testimony is at I RT 170-231, 249-260 (direct examination), 261-308 (cross-examination), 308 (redirect).

[4]  A summary of C.D.'s testimony and a description of her manner of testifying may be found at ECF No. 10-9 (opinion of California Court of Appeal), pp. 3-6, 7-9.

[5]  The hearing is transcribed at I RT 345-373.

1      I do find, for the record, that she would have been traumatized even more if she were made to face the defendant. I know that's not the argument, . . . but I'm considering that in the level of trauma that she was going through and distress that she was in. . . .

. . . [T]he jury never said that they couldn't hear the witness. And while she was not facing towards the defendant and she was not facing defense counsel, she was facing towards the back wall that is behind the jury. She [was] facing towards the jury with her head down and her hair in and around her face. So the jury's view of her, while obscured at times, is still a better view than counsel had.

The court reporter is transcribing the proceedings, and . . . we made sure everything was taken down. When the court reporter indicated she couldn't hear the witness, the answers were repeated. And, as [the prosecutor] points out, the jury can get read back too. So the substance of her testimony, if not heard at certain points during the trial, the jury can get that in the form of readback of the transcript. And then the manner of her delivery, how she spoke, softly, mumbling, the pauses, the emotions, the turning away, they get the manner of the deliver[y] of the substance of her testimony as well.

So the central concerns of the confrontation clause I'm finding are met. Her physical presence, she was under oath subject to cross-exam, and the observations of her demeanor by the trier of fact. And that's really what this comes down to is what is the definition of observations of her demeanor.

I RT 367-369.

      The court noted that while petitioner did not have a full view of C.D.'s face, her hair was not so thick that her face was completely obscured.  The court expressly found that "the jury did have enough of a view of her to judge her demeanor."  Accordingly, the motion was denied.  I RT 371-372.

II.     The Clearly Established Federal Law

      The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him."  The Confrontation Clause guarantees to a defendant both the right to cross-examine and the right "physically to face those who testify against him."  Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987).  While the Supreme Court initially described this right as a "guarantee of face-to-face encounter between witness and accused," Coy v. Iowa, 487 U.S. 1012, 1017 (1988), it later clarified that there is no "absolute right to a face-to-face meeting" but rather a "preference for face-to-face confrontation at trial, which must occasionally give way to considerations of public policy and the necessities of the

7

1   case." Maryland v. Craig, 497 U.S. 836, 849 (1990).

2          The central concern of the Confrontation Clause "is to ensure the reliability of the

3   evidence against a criminal defendant by subjecting it to rigorous testing in the context of an

4   adversary proceeding before the trier of fact." Craig, 497 U.S. at 845.  This concern is satisfied

5   when the witness: (1) is physically present for his or her testimony; (2) testifies under oath; (3) is

6   subject to cross-examination; and (4) may have his or her demeanor observed by the trier of fact.

7   Id. at 845-846; see also Delaware v. Fensterer, 474 U.S. 15, 22 (1985) ("[the Confrontation

8   Clause is generally satisfied when the defense is given a full and fair opportunity to probe and

9   expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-

10  examination, thereby calling to the attention of the factfinder the reasons for giving scant weight

11  to the witness' testimony"); Ohio v. Roberts, 448 U.S. 56, 69 (1980) (oath, cross-examination,

12  and ability to observe demeanor provide "all that the Sixth Amendment demands: 'substantial

13  compliance with the purposes behind the confrontation requirement'").

14         Because assessment of demeanor requires direct observation, the Confrontation Clause

15  generally does not permit witnesses at a criminal trial to testify from behind a screen.  Coy, 487

16  U.S. 1012.  Exceptions to the requirement of physical, face-to-face confrontation are permissible

17  "only where denial of such confrontation is necessary to further an important public policy and

18  only where the reliability of the testimony is otherwise assured." Craig, 497 U.S. at 850.  Under

19  this standard, child abuse victims may be permitted to testify via closed-circuit television upon a

20  showing that the child would be traumatized by testifying in the defendant's presence and where

21  the child's testimony remains subject to rigorous cross-examination. Id. at 855-857.

22         III.    The State Court's Ruling

23         This claim was raised on direct appeal.  Because the California Supreme Court denied

24  discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

25  decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker,

26  501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

27         The Court of Appeal began by thoroughly reviewing the holdings of the U.S. Supreme

28  Court in Coy and Craig, supra, and the leading California cases on the meaning of "face-to-face

confrontation," <u>People v. Sharp</u>, 29 Cal. App. 4th 1772 (1994) and <u>People v. Gonzalez</u>, 54 Cal. 4th 1234 (2012).  ECF No. 10-9 at 14-19.  The court continued:

> As an initial matter, we reject defendant's contention, raised for the first time on appeal, that his confrontation clause rights were violated because the trial court failed to make the case-specific factual findings to justify the accommodation (in the form of permitting her to turn in her chair and face the jury) afforded to the victim, as required under *Craig*.

> Even assuming this argument was preserved for appellate review, we conclude it fails on the merits. Unlike in *Craig*, this case does not involve the denial of face-to-face confrontation. Situations that do not deny such confrontation do not implicate the type of showing required in *Craig*. (*People v. Lord* (1994) 30 Cal.App.4th 1718, 1722.)

>> [Footnote: This case does not involve an exception to the right of face-to-face confrontation, as in *Craig*. Thus, defendant's reliance on cases without any face-to-face confrontation is misplaced. (*See, e.g., Craig, supra*, 497 U.S. at p. 840 [child witness testified outside the defendant's presence via a one-way closed circuit television]; *People v. Arredondo* (2019) 8 Cal.5th 694, 699, 709) [adult witness testified behind a computer monitor]; *People v. Murphy* (2003) 107 Cal.App.4th 1150, 1157-1158 [adult witness testified behind one-way glass]; *Herbert v. Superior Court* (1981) 117 Cal.App.3d 661, 664-665, 671 [courtroom was arranged in a manner that made it physically impossible for defendant and witness to see each other].) We find no merit in defendant's contention that the victim's use of a soft tone and allowing her hair to partially cover her face from time to time amounted to the denial of face-to-face confrontation.]

> Indeed, defendant's argument was effectively rejected in *Sharp* and *Gonzales*. There is no meaningful distinction between the victim's refusal to face defendant or defense counsel here and the conduct that was held not to violate the right to confrontation in *Sharp* and *Gonzales*. There is no right to eye contact with the witness as long as the witness is in defendant's physical presence; thus, it was not necessary for the trial court in this case to make the findings (which the defense did not request) required by *Craig*. (*See Gonzales, supra*, 54 Cal.4th at p. 1267; *Sharp, supra*, 29 Cal.App.4th at pp. 1781-1782.) Nonetheless, as we have set forth in detail ante, the trial court did find that the victim would have been traumatized if she were forced to face directly toward defendant based on its own observations of her and the nature of the alleged crimes. There is ample evidence in the record to support that determination. While the trial court did not hear testimony or take evidence on the victim's emotional trauma prior to her testimony, [footnote omitted] detailed findings before a witness testifies are not required when, as here, the record shows that the seating arrangement or other accommodation was fully justified. (*See Arredondo, supra*, 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Cal.5th at p. 709, fn. 4; *Sharp, supra*, 29 Cal.4th at pp. 1783-1784 [explicit findings of emotional trauma unnecessary where it was apparent from record that witness was experiencing considerable distress and was unable to participate effectively in the proceedings when seated in the conventional position in the witness box].) Thus, defendant was not deprived of his confrontation clause rights because the trial court allowed the victim to turn in her chair. This minor interference with defendant's line of sight was fully justified given the need to complete the victim's testimony and her documented distress.

We also reject defendant's contention that he was deprived of his confrontation clause rights because he, defense counsel, and the jury were unable to hear the victim and observe and assess her demeanor on direct examination. As the trial court found, the record reflects that the important principles underlying the confrontation clause were satisfied here. The victim was physically present in the courtroom during her testimony, testified under oath, and was subject to full cross-examination by counsel and observation by the jury throughout. There was no physical barrier or screen blocking the jury, defendant, or defense counsel from viewing and assessing her demeanor. While the record discloses that her testimony was often difficult to hear because she was bent over in her chair and/or looked down or away from the microphone and spoke softly, defense counsel acknowledged that he could follow along with her testimony, the trial court asked the victim to repeat inaudible answers, and no member of the jury indicated they were unable to hear her testimony at any point. As we have described, the record also discloses that the victim, for the most part, turned in her chair and faced toward the jury during her testimony on direct examination, although she often looked down and her hair intermittently covered the side of her face. The trial court found that the victim's hair did not generally cover the front of her face, although there were times when she looked down and portions of the front of her face were obscured by her hair. On this record, we are unpersuaded by defendant's assertion that the victim's conduct while testifying on direct examination interfered with the jury's ability to assess her demeanor and draw its own conclusions about her credibility. The jury could see the victim's general demeanor and reactions to questioning, including her reaction to the questions about the alleged rapes and physical abuse. We see no material distinction between the circumstances of this case and the facts of *Sharp*, which we find persuasive and follow here. Accordingly, because defendant's confrontation rights were not violated, the trial court properly denied defendant's motion for mistrial. In view of our conclusion, we need not and do not address defendant's prejudice argument.

25

ECF No. 10-9 at 19-21.

26

IV.    Objective Reasonableness Under § 2254(d)

27

The California Court of Appeal accurately identified the principles of federal

28

constitutional jurisprudence that govern petitioner's claim, and it applied them reasonably.  First,

10

1   it was not objectively unreasonable to conclude that there was no denial of "face-to-face

2   confrontation" in this case, and that the <u>Craig</u> criteria for an exception to that right are therefore

3   inapplicable.  The U.S. Supreme Court has found that "face-to-face confrontation" is denied when

4   a witness testifies from different location, as in <u>Craig</u>, or is completely hidden behind a physical

5   barrier, as in <u>Coy</u>.  These situations are easily distinguishable from that presented here.  No

6   clearly established federal law requires the <u>Craig</u> standard to be satisfied before a witness who is

7   physically present in the courtroom and visible to the jury is allowed to face away from the

8   defendant in the witness stand.  Where no U.S. Supreme Court precedent squarely establishes the

9   right on which petitioner relies, there can be no unreasonable application of federal law and thus

10  no federal habeas relief.  <u>Wright v. Van Patten</u>, 552 U.S. 120, 125-26 (2008) (per curiam).  And

11  the failure to extend Supreme Court holdings to novel factual contexts cannot constitute an

12  objectively unreasonable application of federal law.  <u>White v. Woodall</u>, 572 U.S. 415, 426 (2014).

13  Accordingly, petitioner is not entitled to federal habeas relief on grounds that the trial court

14  violated his confrontation rights by failing to make certain findings before permitting C.D. to sit

15  facing away from him.[6]

16          The California Court of Appeal also reasonably decided the question whether petitioner's

17  confrontation rights were substantively violated by the circumstances of C.D.'s testimony: her

18  refusal to look at petitioner, her posture, the hair partially obscuring her features, her "inaudible"

19  voice.  The U.S. Supreme Court has specifically stated that the Confrontation Clause does not

20  require eye contact between witness and defendant.  <u>Coy</u>, 487 at 1019-1020.  And no U.S.

21  Supreme Court decision has found a Confrontation Clause violation based on the manner of

22  ////

23

---

24  [6] Because no <u>Craig</u> showing was required, permitting the witness to turn her chair away from
    defendant was within the trial court's discretion subject to state law parameters that provide no
25  grounds for federal habeas relief.  <u>See</u> <u>Mullaney v. Wilbur</u>, 421 U.S. 684 (1975) ("state courts are
    the ultimate expositors of state law").  The Court of Appeal's affirmance of the trial court's ruling
26  on the matter is therefore not reviewable in federal habeas.  <u>See</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764,
27  780 (1990).  Accordingly, the undersigned does not address petitioner's arguments about whether
    the "accommodation" was "warranted."
28

testimony of a witness who was physically present in the courtroom and visible to the jury.[7]

Section 2254(d) therefore precludes relief.  See Wright, 552 U.S. at 125-26; White, 572 U.S. at 426.  Petitioner's reliance on general confrontation principles does not avail him, as the latitude afforded state courts under § 2254(d) is greatest where the principles relied on by petitioner are general.  See Renico v. Lett, 559 U.S. 766, 776 (2010).  The California Court of Appeal distinguished Coy and Craig on their facts, with reference to the record in this case, and the distinctions it drew—between presence in and absence from the courtroom, and between physical barriers and the intermittent obscuring of a face by hair—are far from "objectively unreasonable."

Finally, the state appellate court found that the jury had sufficient opportunity to observe C.D.'s demeanor and an adequate basis to evaluate her testimonial credibility, satisfying the core concerns of the Confrontation Clause.  Petitioner makes no argument that the denial of his claim in state court was based on objectively unreasonable factual findings by the trial court or the Court of Appeal.  See 28 U.S.C. § 2254(d)(2).  The state courts' factual findings are presumed to

---

[7]  Neither has petitioner identified any lower court authority finding a Confrontation Clause violation on analogous facts.  Lower federal court decisions may serve as persuasive authority in determining what law has been clearly established by the United States Supreme Court and the reasonableness of a particular application of that law.  Hurd v. Terhune, 619 F.3d 1080, 1085 (9th Cir. 2010).  Respondent has identified numerous decisions finding no Sixth Amendment violation, or no unreasonable application of federal law in a state court finding of no Sixth Amendment violation, when a witness testifies while facing away from the accused or with their face partially obscured: e.g., Ellis v. United States, 313 F.3d 636, 646-53 (1st Cir. 2002) (child witness testified in a chair facing the jurors but facing away from the defendant); Morales v. Artuz, 281 F.3d 55, 59 (2d Cir. 2002) (key witness testified while wearing dark sunglasses); Smith v. Graham, 2012 WL 2428913, at *8 (S.D.N.Y. May 7, 2012) (witness testified while wearing a disguise, a wig and fake beard); United States v. Levenite, 277 F.3d 454, 465 (4th Cir. 2002) (defendants could not see the faces of witnesses testifying against them due to number of defendants at trial and size of courtroom); United States v. Iron Moccasin, 878 F.2d 226, 230 (8th Cir. 1989) (easel blocked defendant's view of witness); Spencer v. Yates, 2011 WL 2118862, at *7 (E.D. Cal. May 8, 2011) (left side of witness's face was shielded from view of defendant); Bailey v. Woodford, 2010 WL 4702348, at *24 (C.D. Cal. Oct. 8, 2010) (witness's back was turned to defense counsel and defendant); Fuson v. Tilton, 2007 WL 2701201, *13-*14 (S.D. Cal. Sep. 10, 2007) (witness testified while shielding her face from petitioner), aff'd, 305 Fed. Appx. 425 (9th Cir. 2008).  ECF No. 11 at 26, 27-28 n.1, 29.  These decisions and the numerous similar state court decisions cited by respondent empirically demonstrate that fair minded jurists can and do disagree with petitioner's urged application of Confrontation Clause jurisprudence.  This state of the law definitively precludes relief under § 2254(d).  See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) (where fair-minded jurists can disagree, § 2254(d) bars federal habeas relief).

be correct, 28 U.S.C. § 2254(e)(1), and in this case the pertinent findings are well supported by the record.  In light of these findings—that C.D. sat relatively close to the jurors and faced them, that no physical barrier obstructed the jury's view of her as she testified, that her face was only intermittently and partially obscured by her hair, that she repeated answers when asked by the court reporter and no juror indicated difficulty hearing her, along with the indisputable facts that she testified under oath and was thoroughly cross-examined—it was perfectly reasonable of the California Court of Appeal to conclude that the jury had a full and fair opportunity to assess her credibility and the Confrontation Clause was thus satisfied.  See Craig, 497 U.S. at 845; Fensterer, 474 U.S. at 22; Roberts, 448 U.S. at 69.

For all these reasons, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Federal habeas relief is therefore unavailable.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 20, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE